Goff, Appellant, vs. Stoughton State Bank, Respondent.

*November 5 — November 25, 1890.*

*Evidence: Payment of draft:* Res gestæ : *Bank books: Burden of proof.*

1. The question being whether when a draft was delivered by plaintiff to the defendant bank it was paid or was to have been passed to his credit, testimony that at the close of business on that day the cash account of the bank and the actual cash on hand balanced, and that this could not have occurred unless the amount of the draft had been paid to plaintiff, is not admissible as pertaining to the *res gestæ*, numerous transactions between the bank and other persons having intervened, and the plaintiff not being present when the account and cash were so balanced.

[2. Whether, in such case, the books of the bank would have been competent evidence, or to what extent and for what purposes they might be used as evidence if admissible, not determined.]

Goff vs. Stoughton State Bank.

3. The plaintiff having assumed the burden of showing *prima facie* that he had not been paid for the draft, an instruction that the burden was upon the defendant to prove payment, was unnecessary. [What the presumption as to payment would be in such a case, not determined.]

APPEAL from the Circuit Court for *Dane* County.

On April 9, 1889, plaintiff delivered to the cashier of the defendant bank, at its banking-house, a negotiable draft or check for $38.50, drawn by a firm in Illinois upon the Merchants' National Bank of Chicago, payable to one Walters, and by him indorsed to the plaintiff. At the same time, plaintiff (who was a customer of the bank and one of its regular depositors) delivered his bank-book to the cashier, and requested that it be then balanced. The book was thereupon written up by a clerk and delivered to the plaintiff. The amount of the draft was not entered therein to his credit. A few days later the plaintiff ascertained that he was not credited with the draft, and requested the cashier to give him credit therefor on his bank-book. The cashier refused to do so, claiming he had paid plaintiff for the draft. This action is to recover the amount of such draft.

On the trial the plaintiff testified that the cashier did not pay him the amount of the draft. The cashier testified that he did so when the plaintiff delivered the draft to him. Testimony was introduced on either side which, it is claimed, tends to corroborate the statements of the plaintiff on the one hand and those of the cashier on the other.

The cashier and book-keeper or clerk of the bank testified, as witnesses in its behalf, that it was their business to make the cash-book of the bank kept by the clerk, and the actual cash on hand kept by the cashier, balance each day, and they were allowed by the court to testify, against plaintiff's objection, that on April 9, 1889, and on several days immediately before and after that date, the cash-book and actual cash substantially balanced; and, further, that these

would not have so balanced on April 9th had the draft not been paid. The books of the bank were not formally offered as evidence; yet, under like objection, these witnesses testified to their contents in some particulars, and to such balances. Further reference to the testimony will be found in the opinion.

The jury returned a verdict for the defendant. A motion for a new trial was denied, and judgment for the defendant entered pursuant to the verdict. The plaintiff appeals from the judgment.

For the appellant there was a brief signed by *Luse & Wait*, and oral argument by *L. K. Luse*. They argued, among other things, that the court improperly admitted the books of account of the defendant bank to prove payment for the draft. R. S. secs, 4186, 4187; *Winner v. Bauman*, 28 Wis. 563; *Inslee v. Prall*, 23 N. J. Law, 457; *Kelton v. Hill*, 58 Me. 114; *Basset v. Spofford*, 11 N. H. 127; *Rich v. Eldridge*, 42 id. 153; *Turner v. Twing*, 9 Cush. 515; *Townsend v. Townsend*, 5 Harr. (Del.), 125; *Pettit v. Teal*, 57 Ga. 145; *Low v. Payne*, 4 N. Y. 247; *Irvin v. Wartendyke*, 2 E. D. Smith, 374; 1 Phil. Ev. 379, 385; *Hess' Appeal*, 112 Pa. St. 168. They were not admissible as memoranda. No testimony was given to show that the witnesses did not recollect the facts sought to be proved by the introduction of the books, and upon the main question the cashier professed to remember accurately what transpired. *Russell v. H. R. R. Co.* 17 N. Y. 134; *Guy v. Mead*, 22 id. 462; *Harvey v. Cherry*, 76 id. 444; *Nat. Ulster Co. Bank v. Madden*, 114 N. Y. 280; *Kelsea v. Fletcher*, 48 N. H. 282; *Schettler v. Jones*, 20 Wis. 412; *Riggs v. Weise*, 24 id. 545; 1 Whart. Evi. secs. 238–240; *Nicholls v. Webb*, 8 Wheat. 326. Bank books stand upon the same footing as those of a private party. *Wolsey v. Bohn*, 42 Minn. 235; *Bank v. Officer*, 12 Serg. & R. 49; *Barnes v. Simmons*, 27 Ill. 512; 1 Greenl. Evi. secs. 474, 495; 2 Phil. Evi. 296, and

note.   Account books are only evidence where they contain charges of one party against another.   *Reed v. Jones*, 8 Wis. 436–467; *Masters v. Marsh*, 19 Neb. 466; *Sanford v. Miller*, 19 Ill. App. 536; *Putnam v. Goodall*, 31 N. H. 419.   The burden of proof was upon the defendant to prove payment. *Rossiter v. Schultz*, 62 Wis. 655; Benj. on Sales, secs. 313, 335, 1055; *Smith's Appeal*, 52 Mich. 415; *Terwilligen v. Murphy*, 104 Ind. 32; 7 Wait's Act. & Def. 396; Barb. Payment, 293; *Kœnig v. Katz*, 37 Wis. 157.

For the respondent there was a brief by *Bashford & O'Connor*, and oral argument by *R. M. Bashford*.   They contended, *inter alia*, that there was no error in respect to the admission of the books of the bank.   The entries or books were not offered in evidence.   The book-keeper only referred to the books for the purpose of refreshing his memory, and it was proper that he should do so although the books themselves were not admissible.   *Reed v. Jones*, 15 Wis. 40; *Winner v. Bauman*, 28 id. 563; *Folsom v. Apple R. L. D. Co.* 41 id. 602; *Curran v. Witter*, 68 id. 16; Abbott, Tr. Evi. 326; *Pendelton v. Weed*, 17 N. Y. 72; *Dewey v. Hotchkiss*, 30 id. 497.   Possession of a negotiable instrument is presumptive evidence of ownership.   *Hungerford v. Perkins*, 8 Wis. 267; *Dugan v. U. S.* 3 Wheat. 173; *Norris v. Badger*, 6 Cow. 449; *Dean v. Hewitt*, 5 Wend. 257; *Palmer v. Gardner*, 77 Ill. 143; *Jewett v. Cook*, 81 id. 260; *Garvin v. Wiswell*, 83 id. 215; 2 Randolph, Comm. Paper, sec. 776; 3 id. secs. 1475–6, 1648; 2 Greenl. Evi. secs. 527–8; *Cook v. Helms*, 5 Wis. 107; *Conway v. Case*, 22 Ill. 127; *Kidder v. Horrobin*, 72 N. Y. 169; Lawson, Presumptive Evi. 347; Id. 344, rule 75.

Lyon, J.   I. The controlling question of fact litigated on the trial was, Did the plaintiff deposit the draft for $38.50 with the bank to be passed to his credit, or did he receive

the cash therefor when he delivered it to the cashier? Upon this question the testimony is in direct conflict, and would support a verdict either way. To corroborate the testimony of its cashier that he paid plaintiff in cash for the draft, the bank was allowed to introduce testimony tending to prove that, at the close of its business on April 9th, its cash account and actual cash on hand balanced, and that this could not have occurred unless the amount of the draft had been paid to plaintiff on that day. The admission of such testimony is alleged as error.

It appears by the testimony of the cashier and book-keeper that no entry in respect to the draft was made in the books of the bank when the plaintiff delivered the same to the cashier. It will be assumed, although the testimony is quite confused and unsatisfactory on the subject, that, when the accounts of the transactions of that day were made up after banking hours, the draft was entered in a book called the "remittance register," and posted from that book into the cash account. The entry in the remittance register is entirely consistent with either theory of the case. It would have been so entered whether the plaintiff was paid the cash therefor or not. The posting of the amount of the draft from such register into the cash account would have necessarily disturbed the cash balance for the day, if the money had not been paid out for the draft, provided all other transactions of the bank on that day were accurately entered in the cash account. In that case cash would be credited with $38.50, which had not been paid out, and there would have been a discrepancy to that amount between the cash account and actual cash — the latter being just the amount of the draft too large. Hence a very persuasive argument in support of the defendant's theory of the case can be based upon the alleged fact that the cash account and actual cash balanced on April

9th.   The  testimony  of  such  balance  is  therefore,  or  may
be,  important  in  the  case,  and,  if  improperly  admitted,  the
error  is  material,  and  necessarily  fatal  to  the  judgment.

But  little  testimony  was  given  concerning  specific  items
of  the  cash  account,  but  the  testimony  went  mainly  to  the
absence  of  entries  therein  showing  that  the  draft  in  ques-
tion  was  to  be  passed  to  the  credit  of  plaintiff,  and  to  the
general  fact  that  the  cash  substantially  balanced  on  that
day.   It  appears  affirmatively  by  the  testimony  of  the
cashier  that  the  cash  account  contained  no  entry  showing
payment  of  the  amount  of  the  draft  to  the  plaintiff.   When
asked  if  he  had  any  record  of  such  payment,  he  replied:
"I  have  no  record  of  it  at  all  more  than  this — I  paid  it."

We  do  not  doubt  that  any  entries  or  transactions  of  the
parties,  or  either  of  them,  in  respect  to  the  draft  which  per-
tain  to  the  *res  gestæ*  may  properly  be  proved  by  either  party,
but  under  the  circumstances  of  this  case,  as  above  stated,
we  do  not  think  it  competent  for  the  defendant  to  prove  its
own  acts  in  respect  thereto,  unless  such  acts  are  part  of  the
*res  gestæ.*   We  can  conceive  of  no  other  valid  ground  for
the  admission  of  such  proof.   The  draft  was  delivered  to
the  cashier  early  in  the  day,  and  numerous  transactions  be-
tween  the  bank  and  other  parties  intervened  before  the
cash  was  made  up  after  banking  hours.   When  the  entries
were  made  in  the  cash-book  and  the  cash  was  balanced
the  plaintiff  was  not  present  and  had  no  knowledge  of  the
processes  by  which  such  balance  was  reached.   It  cannot
properly  be  said,  therefore,  that  these  processes  pertained
to  the  *res  gestæ.*   In  *Sorenson  v.  Dundas*,  42  Wis.  642,
RYAN,  C.  J.,  said:  "A  meeting  material  to  the  issue  took
place  between  the  parties.   The  court  below  permitted  the
respondent  to  testify  in  chief,  in  his  own  behalf,  to  an  ac-
count  of  the  meeting  which  he  gave  to  strangers  after  it
had  ended  and  the  parties  had  finally  separated.   This  was

not part of the transaction, but a subsequent narrative of it.   Declarations are verbal parts of the *res gestæ* only when they are contemporaneous.   The respondent's narrative after the occurrence belonged no more to the *res gestæ* than his evidence on the trial.   It is too clearly inadmissible for discussion.   1 Greenl. Ev. § 110."   In the application of the rule, no difference is perceived between verbal and written statements of a party.   We have here written statements made too late to be regarded as of the *res gestæ*.   We think the case is ruled by *Sorenson v. Dundas*, and hence that the testimony under consideration was improperly admitted.   For this error the judgment must be reversed.

2.  The books of the bank were not put in evidence, but, as we understand the case, the witnesses only resorted to certain entries therein, and to the general result deduced from all the entries, as memoranda for the purpose of refreshing their recollections of the transactions in question. We are not therefore called upon to determine whether such books would have been competent evidence for any purpose, or to what extent and for what purposes they might be used as evidence if admissible.

3.  The court refused to instruct the jury, as requested by plaintiff, that the burden was upon the defendant to prove it paid for the draft.   The plaintiff testified in his own behalf, when proving his side of the case, that he never received the money for the draft.   He thus took upon himself the burden of proof, showing *prima facie* that he had not been paid for the draft, and the instruction became unnecessary, assuming it to be correct as an abstract proposition of law.   See *Spaulding v. C. & N. W. R. Co.* 33 Wis. 582. The court instructed the jury that, in the absence of any other proof, the presumption would be that the draft was paid for when delivered to the bank.   This instruction was based upon an hypothesis not in the case, for there

was other proof on the subject. It were better had the instruction been omitted. We determine no rule of presumption in the present case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded for a new trial.

