## SOVEREIGN CAMP, WOODMEN OF THE WORLD, *v.* COX ET AL.

[No. 5,414.    Filed October 12, 1906.    Rehearing denied April 5, 1907.    Transfer denied June 28, 1907.]

1. TRIAL.—*Burden of Proof.—Payment of Dues.—Insurance.—Mutual Benefit.*—The burden of proving that a member of a fraternal beneficiary society failed to pay his dues, thus forfeiting his rights as a member, is upon such society. p. 267.
2. APPEAL.—*Weighing Evidence.*—Where there is some evidence tending to establish the material allegations of the complaint, a verdict for plaintiff will not be disturbed on appeal. p. 267.
3. INSURANCE.—*Mutual Benefit.—Dues. — Payment. — Evidence.*—Evidence of the payment of the deceased member's dues to his beneficiary society on June 19, and July 3, without any showing for what periods such dues were paid, authorizes an inference that they were paid for June and July respectively. Comstock, P. J., Wiley and Rabb, JJ., dissenting. p. 267.

From Superior Court of Vanderburgh County; *John H. Foster,* Judge.

Action by Annie Bell Cox and others against the Sovereign Camp, Woodmen of the World. From a judgment for plaintiffs, defendant appeals. *Affirmed.*

*Charles L. Wedding,* for appellant.
*Philip W. Frey* and *George K. Denton,* for appellees.

ROBY, J.—This is an action upon a beneficiary certificate for $1,000, payable to appellees upon the death of James A.

·Williamson. The cause was tried by a jury, a verdict for $772.50 returned, and judgment rendered on the verdict.. The question for decision, arising upon the assignment that the court erred in overruling appellant's motion for a new trial, is whether there is evidence tending to support the verdict.

Williamson died August 24, 1903. Assessments were payable monthly, and could be paid at any time during the · month. If the July assessment was paid, the cer-

1. tificate was in force at the time of the death. If the July assessment was not paid, then, by the terms of the certificate the same was not in force. The burden of establishing nonpayment of the assessment was upon appellant. *Supreme Lodge, etc.,* v. *Johnson* (1891), 78 Ind. 110.

If there is evidence tending to support the verdict, this court is powerless to interfere with it, although a contrary finding might properly have been based upon the. 

2. same evidence. The distinction between the duties of a trial court and an appellate tribunal is perfectly well established, and must be respected.

Assessment 153 was paid by H. J. Schilling for Williamson on July 3. Assessment 152 was paid on June 19. The following question was asked Schilling and answered:

3. "If you were acquainted with James A. Williamson, state if he was a member of your camp, and what, if anything, you know of any one, for him, paying an assessment for dues, during the month of June, 1903? A. Yes, I knew him, and paid his assessment for the month of June, 1903." It is also in evidence that Schilling paid assessment 153 for Williamson on July 3. It is not shown that assessment 153 was the assessment for June; it is not shown but that assessment 152 was the June assessment; and it is not shown that Schilling did not pay more than one assessment for Williamson. It might be inferred from the question and answer set out that Schilling did pay the June assessment on June 19. The presumption is that the pay-

ments were made when they were due, and it can not be said that the evidence conclusively shows that the payment made on July 3 was the payment for June. Indeed the contrary inference seems the more reasonable.

The judgment is therefore affirmed.

Robinson, C. J., Black and Myers, JJ., concur. Comstock, P. J., and Wiley, J., dissent.


## DISSENTING OPINION.

COMSTOCK, P. J.—The action was brought by appellees against the appellant upon a beneficiary certificate for $1,000, issued by the appellant May 29, 1902. The complaint is in one paragraph, and alleges the issuing of a certificate to James A. Williamson, providing that, if the member died during the second year, there should be paid $750 and $100 for a monument; that Williamson died August 24, 1903; that he and the plaintiffs performed all the conditions; that the defendant denied all liability, on the ground that all rights had been forfeited by Williamson's failure to pay certain assessments and dues payable prior to his death; and that the money was due, with interest. The demurrer to the complaint for want of facts was overruled. Defendant then filed an answer, alleging that Williamson failed to pay his assessment for July, 1903, and that, under his contract and the law, he forfeited all rights under the certificate sued upon. To this answer plaintiffs replied: (1) By a general denial; (2) that defendant had, by custom of accepting assessments after due, and by express contract and agreement, waived payment of the assessments. A demurrer for want of facts sufficient to avoid the answers was overruled to this second paragraph of reply. The second paragraph of reply was dismissed, when both sides had rested. The trial by jury resulted in a verdict for the plaintiffs for $770.50, on which

judgment was rendered. The errors assigned are the overruling of the defendant's demurrer to the complaint, and the overruling of its motion for a new trial. The sufficiency of the complaint is not discussed, and is therefore waived. The court permitted plaintiffs to dismiss the second paragraph of answer, pleading waiver of the conditions of the certificate. In this there was no error. This left the issue formed on the complaint and the answer denying the payment of certain assessments. The first question presented by the motion for a new trial is, was the assessment for July paid?

J. A. Murray, in behalf of defendant, testified that he was clerk at Live Oak Camp, No. 5, Woodmen of the World, located at Memphis, Tennessee, during the year 1903; that James A. Williamson was a member of said camp; that the last assessment paid to him (Murray) for Williamson, was $1.25 paid by H. J. Schilling, on July 3, 1903, for assessment No. 153. H. J. Schilling testified that he had held the office of escort of Live Oak Camp, Woodmen of the World, during the year 1903. He was asked and he answered the following questions: Q. "If you were acquainted with James A. Williamson, state if he was a member of your camp, and what, if anything, you know of any one paying for him an assessment for dues during the month of June, 1903. A. Yes, I know him, and paid his assessment for the month of June, 1903. Q. State with whose money such assessment or dues was paid in June, 1903, and, if your own, whether said Williamson ever, repaid you. A. I paid it with my own money, and he had not paid me at the time of his death." It was admitted by the plaintiff that the assessment for July, 1903, was $1.25, and was due, but it was not admitted that it was unpaid. The plaintiff introduced in evidence a receipt for assessment No. 152, which receipt is in words and figures as follows:

"Clerk's receipt.

$1.25　　　　　　　　　Woodmen of the World.

Received of James A. Williamson this June 19, 1903, as follows:

For assessment No. 152........................ .75
Emergency fund dues........................ .10
Sovereign Camp monthly dues................. .15.
Camp dues from ——, 190—.............. .25
　　　　　　　　　　　　　　　　　　　　　　——
　　Total .........：........................：..$1.25

J. A. Murray, Clerk."

The foregoing is all the evidence introduced upon the issue of the payment of the assessment for July, 1903. The proposition for which appellees contend, that, where it pleads that certain assessments have not been paid by the insured, the burden is upon it to prove such failure, is correct. 4 Joyce, Insurance, §3826.

Thus it appears that the last assessment paid for Williamson, was paid by Schilling, was No. 153, was for the month of June, and was paid July 3, 1903. Assessment 152 was paid in June, 1903. The assessment for each month was payable during the month, or on the first day of the following month, and on failure to make payment on or before the first day of the following month the member stood suspended. It will not be presumed that payment of the July assessment was made before it was required under the custom which was practiced, "especially in view of the fact that appellees, in the second paragraph of reply, averred that the assessments against said member for a period of six months prior to his death had all been paid and accepted by appellant after the first day of the month following that on which they became due, and that appellant waived the failure to pay the July, 1903, assessment, on or before the first day of the following month.

The third reason set out in the motion for a new trial is, that the defendant was surprised and misled by the plain-

tiffs, in this: that in conference between the plaintiffs' and
defendant's counsel, the plaintiffs' counsel claimed only that
the defendant, by accepting assessments from the member,
J. A. Williamson, had waived prompt payment of the as-
sessment for July, 1903, and in which conference it was
tacitly agreed that an assessment of $1.25 was due for July,
1903, and that it was never paid; that in a letter written
October 9, 1903, by B. Wood Jewell, chairman of the sov-
ereign finance committee of the defendant, which commit-
tee passes upon all claims against the defendant, to P. W.
Frey, then the plaintiffs' attorney, notice was given said
attorney that said Williamson became suspended from the
order for the nonpayment of his assessment and dues for
July, 1903, and therefore had no claim.    To this letter
plaintiffs' counsel answered January 11, 1904, by letter
mailed to and received by said Jewell, as follows:

"We are representing the beneficiaries of Mr. J. A.
Williamson under certificate No. 6,064 in your order,
and your letter of October 9, 1903, to Mr. Frey of this
city stating that Mr. Williamson had forfeited his cer-
tificate by failing to pay his assessments and dues for
July last, has been handed to us.   In looking over the
papers of Mr. Williamson, we note that it had been the
custom to accept his assessments and dues after the time
for paying them, according to the terms of the contract,
had expired.   As you know, this is a waiver of prompt
payment.   His receipts show that the payments were
made as follows:   No. 147 for December, 1902, was paid
January 2, 1903; No. 148 for January, 1903, was paid
February 2, 1903; No. 149 for February, 1903, was paid
March 4, 1903; No. 150 for March, 1903, was paid
April 2, 1903; No. 152 for May, 1903, was paid June
19, 1903; No. 153 for June, 1903, was paid July 3, 1903.
As you know, the habit of accepting dues and assess-
ments after the delinquency is a waiver of prompt pay-
ment, and, under the circumstances, we submit that
your order is liable for the payment of this claim.   We
hope that you will settle the matter up without involv-
ing us in litigation and putting our clients to the ex-
pense that would be occasioned thereby.

Denton & Seiler."

The motion further states that defendant conducted its case upon the faith that these representations were known by both sides and that they were true, and having no intimation that such facts would be disputed, simply introduced such evidence as made certain the facts; that the entire evidence was introduced upon both sides in less than one hour's time; that the plaintiffs introduced no evidence except the receipt for the June 19, 1903, assessment No. 152, and the plaintiffs, relying upon the knowledge of both sides, and that this receipt was for May, and defendant supposing it was offered only in support of the alleged waiver, offered no further evidence in reference to it, and the evidence closed at 11 o'clock, the defendant opening with an argument of ten minutes and the plaintiffs answering in an argument of about twenty minutes; that for the first time, and to the surprise of the defendant, the plaintiffs' counsel argued to the jury that the receipt of June 19, 1903, for assessment No. 152, was in payment of the assessment for that month, not May, and therefore assessment No. 153 was for July, and was paid July 3, 1903, when the plaintiffs knew it was for June; that the defendant was taken wholly unawares and by surprise, and, the case being submitted to the jury in less than an hour after the argument began, had no time to meet and counteract this surprise, and thereby an erroneous verdict was returned by the jury. The foregoing statement is sworn to.

Just before the defendant rested, Charles L. Wedding, counsel for the defendant, said to the court, in the presence of the jury, that there might be some doubt as to what monthly assessment the receipt introduced by the plaintiff applied, and he asked leave to place a witness on the stand to explain the matter, to which the court assented, and said Wedding then called for Henry Young, the bailiff of the court, who had been on the stand as a witness in the case, but Young being temporarily absent from the court room, counsel said that he thought it was clear enough, and rested

his case. After the close of the argument, and about thirty minutes after the jury had retired to consider their verdict, Mr. Wedding, counsel for the defendant, moved that the jury be recalled and he be allowed to show by Henry Young, who was then present, and was a member of the order, that assessment No. 152 was for May, 1903, and that assessment No. 153 was for June, 1903, which motion was overruled, to which the defendant excepted.

The jury having returned a verdict against the defendant, and the defendant having filed its verified motions for a new trial on April 14, 1904, the plaintiffs filed in said cause counter affidavits of C. M. Seiler, P. W. Frey, and George K. Denton, as counsel for plaintiffs. C. M. Seiler made affidavit that he had not at any time made any agreement, either tacitly or otherwise, with counsel for defendant, that the assessment in controversy, for the month of July, 1903, was not paid. P. W. Frey made an affidavit to the same effect. George K. Denton made affidavit that he was, on April 8, 1904, and before, and from the time the suit was originally filed, attorney for the plaintiffs, and that he had charge of the case; that he had never at any time, tacitly or otherwise, agreed that the assessment for July, 1903, was not paid; that he never had any knowledge or information on the question as to whether the assessment for the month of July, 1903, was paid, except the statement in a letter written by the chairman of the sovereign finance committee, on October 9, 1903, in which said chairman claimed that the order was not liable for the payment of the claim under the certificate in controversy, for the reason that the member had not paid his assessment and dues for the month of July, 1903; that, assuming that this statement was true, and having no knowledge to the contrary, the plaintiffs not living in the same city or state with their brother at the time of his death, and knowing nothing to the contrary, and supposing that the assess-

ment paid July 3, 1903, must be for the month of June, and that the assessment paid June 19, 1903, must be for May, and that other assessments referred to in the letter set out in the defendant's third cause for a new trial had likewise been paid for the months preceding that in which they were paid, he prepared to try the case on the theory set out in the second paragraph of reply—that is, that there had been a waiver of prompt payment by the habitual acceptance of past due assessments; that he assumed this solely upon the faith of the statement of the chairman of the sovereign finance committee, before referred to, and had no knowledge that such was not the case until shortly before the case was called for trial, when, in looking over the testimony which the defendant had secured from the clerk, J. A. Murray and the escort, H. J. Schilling, he learned that the clerk of the local camp had not accepted the past dues from the member J. A. Williamson, and that therefore the assessment paid on July 3, 1903, was the assessment for that month, and that the assessment for June 19, 1903, was the assessment for that month, and that after the evidence was introduced, seeing that under the testimony no past-due assessment had been accepted from the deceased member, and that therefore there was nothing in the evidence to sustain a claim of a waiver, counsel dismissed the paragraph of reply setting up the waiver, as they were compelled to do in view of the testimony introduced by the defendant at the trial; that the plaintiffs then went to trial on the issue made by the general denial to the defendant's answer, setting up the nonpayment of the July assessment. Affiant further says that, before the case was argued to the jury, he stated to counsel for the defendant, in the hearing of the court, that he would admit that there was an assessment for the month of July, 1903, but refused to admit that it was not paid, and the court, prior to the argument, stated to counsel for defendant his understanding that the agree-

ment was to this effect and that the question at issue was as to whether the assessment for July, 1903, was paid. In further support of the motion for a new trial, defendant filed the affidavit of J. A. Murray, as follows: "I am a member of the defendant order, Woodmen of the World, and was, during the year 1903, clerk of the Live Oak Camp, Memphis, Tennessee. The last assessment ever paid by or for J. A. Williamson, a member of said Live Oak Camp, was No. 153, for the month of June, 1903, which was paid · by H. J. Schilling, July 3, 1903, upon evidence that said Williamson was at the time in good health. Assessment No. 152, paid June 19, 1903, was for the month of May, 1903, and not for the month of June, 1903, and said J. A. Williamson was suspended from the order on August 2, 1903, for the nonpayment of assessment No. 154, and so reported in my report to the sovereign camp for the month of July. Said assessment No. 154 for July, 1903, has not been paid or tendered me since."

Defendant also filed the affidavit of John F. Bittrolff, as follows: "John F. Bittrolff says that he is, and has been for several years, a member of the Woodmen of the World, the defendant order, and has been clerk of White Oak Camp for the last three years; that assessments payable by the members of said order each month are numbered continuously beginning with No. 1 upon the foundation of the order about thirteen years ago; that assessments for the first seven months of the year 1903 upon the members of the order, including all camps in the states of Indiana, Tennessee, and other states belonging to the defendant order, were as follows: No. 148 for January, 149 for February, 150 for March, 151 for April, 152 for May, 153 for June, and 154 for July."

The question of the agreement between counsel as to the fact in issue was for the court. The recalling of the jury to hear additional testimony was largely within the discre-

tion of the court, but if the affidavits of the officers of appellant are true, the judgment of the court is wrong. The purpose of judicial investigation is to do justice, even if the failure of appellant's counsel to introduce the additional evidence in question, before the retirement of the jury, was negligence, which we do not concede, yet it is brought to the knowledge of the court, upon the showing made, that if the judgment is permitted to stand injustice will be done the appellant. Appellant should not be denied the privilege of making legitimate proof of its defense because counsel differ in their statements upon the subject of the alleged agreement. The judgment should be reversed and a new trial had, because (1) the only reasonable inference which can be drawn from the evidence is that the July assessment was not paid, and that there is no evidence even tending to show that it was paid; (2) that to refuse a further hearing is to affirm a judgment in the face of offered evidence that it is without pretense of right.

WILEY, J.—I concur in the dissenting opinion upon two grounds: (1) Because, in my judgment, the evidence shows beyond a question of doubt that the insured did not pay his July assessment, and that by reason thereof he stood suspended; (2) it clearly appears from the entire record that an incorrect result was reached in the court below, as a result of which an unconscionable injustice has been done appellant.

The judgment should be reversed.


ON PETITION FOR REHEARING.

PER CURIAM.—The petition for a rehearing is denied.

## DISSENTING OPINION.

RABB, J.—I am unable to concur with the majority of the court in overruling the appellant's petition for a rehearing in this cause. In my view, the appellant's petition for a rehearing should be sustained, and the cause reversed.

I think the court below erred in refusing to grant appellant's motion for a new trial, for the reason that the verdict returned by the jury is not sustained by the evidence. There was no conflict whatever in the evidence, and I think it fairly proved that the assured, J. A. Williamson, failed to pay the assessment due upon his policy in the order for the month of July, 1903, and upon which the validity of the policy depended. All the evidence upon the subject was the testimony of the clerk of the camp to which he belonged, J. A. Murray, and of the escort, H. J. Schilling. The by-laws, introduced in evidence, provided that the payment of assessments and dues should be made to the clerk of the camp. The testimony of J. A. Murray, clerk of the camp, to which Williamson belonged, was that he did not know J. A. Williamson personally, but that he was a member of Live Oak Camp; that the last assessment paid for him was $1.25, for assessment No. 153, paid by H. J. Schilling, July 3, 1903; and that it was the custom of the clerk, if the member was in good health, to receive payment after the first of the month, which was the last day of payment by the terms of the by-laws.

Mr. Schilling was asked, and he answered, the following question: "If you were acquainted with J. A. Williamson, state if he was a member of your camp, and what, if anything, you know of his payment, or the payment for him, of an assessment of dues during the month of June, 1903. A. Yes, I knew him, and paid his assessment for the month of June, 1903." He testified that he paid the dues with his own money, and that Williamson never repaid him. It was

admitted that the dues for July were $1.25. The appellees introduced in evidence a receipt reading as follows:

"Clerk's receipt Woodmen of the World.

Received of J. A. Williamson this June 19, 1903, as follows:

| | |
|---|---:|
| For assessment No. 152 | .75 |
| Emergency fund dues | .10 |
| 800 camp monthly dues | .15 |
| Camp dues from ———, 190— | .25 |
| Total | $1.25 |

J. A. Murray, Clerk."

I think this evidence admits of but one construction, and that is that the dues paid by Schilling for Williamson were the dues that Murray testifies that Schilling paid him on July 3, 1903. There is no presumption that Schilling paid any dues for Williamson except those he testifies he paid. The presumption is that all dues owing by Williamson to the camp that were paid at all were paid by the party who owed them, J. A. Williamson; and, in the absence of any evidence to the contrary, I think that the inference must be that all such dues were paid by Williamson. The receipt introduced in evidence, showing the payment of dues for assessment No. 152 on June 19, is to the effect that the money was received from J. A. Williamson, and, even in the absence of such declaration in the receipt, the presumption would be that the payment was made by J. A. Williamson. I think the inference is irresistible that the payment made by Schilling for the month of June, as he testifies, was for assessment No. 153, which was the last assessment paid for Williamson, and the payment of which is testified to by the witness Murray.

I therefore feel it my duty to dissent from the decision rendered by the court in this case.

Comstock, J.—I concur in the foregoing opinion of Rabb, J. The receipt for assessment No. 152 bears date June 19,

1903. The last assessment paid on the certificate in suit was paid by H. J. Schilling, July 3, 1903, and was numbered 153. The only assessment shown to have been paid by Schilling was for the month of June, 1903. The only reasonable inference which can be drawn from this evidence is that the July assessment is unpaid.