## EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES v. CAMPBELL.

[No. 12,402.   Filed December 19, 1925.   Rehearing denied April 27, 1926.   Transfer denied December 14, 1926.]

1. INSURANCE.—*Proof of waiver of conditions in contract may be made under general allegation of performance.*—Proof of waiver of conditions in insurance contract may be under general averment that insured and beneficiaries have performed all conditions of the insurance contract on their part to be performed.   p. 454.

2. INSURANCE.—*Denial of liability because of forfeiture of policy by nonpayment of premium excuses proof of loss.*—Where the insurer claims a forfeiture of policy by nonpayment of premium, it waives the right to insist on proofs of death in accordance with the terms of policy.   p. 454.

3. INSURANCE.—In an action on an insurance policy, plaintiff must prove by a fair preponderance of the evidence all the material allegations of the complaint.   p. 454.

4. TRIAL.—*Party objecting to instruction because incomplete must prepare and tender instruction covering omitted points to make error available.*—A party objecting to an instruction because it does not cover the issues completely, but which is correct as far as it goes, must prepare and tender an instruction covering the omitted issues, as an exception to the given instruction presents no available error.   p. 454.

5. INSURANCE.—The insurance company has the burden of proving the nonpayment of any premium after the first.   p. 455.

6. APPEAL.—*Appellant cannot complain of instructions framed in harmony with his pleadings.*—Appellant cannot complain of instructions that were framed in harmony with his pleadings, even though erroneous, as he invited the error.   p. 455.

7. TRIAL.—*Peremptory instruction should not be given where the credibility of witnesses is involved.*—A peremptory instruction directing a verdict for either party should not be given where the evidence is all in parol and involves the credibility of witnesses.   p. 455.

8. TRIAL.—*Defendant not entitled to peremptory instruction though uncontradicted evidence established a defense pleaded.*—The defendant, having the burden of proving all affirmative defenses, is not entitled to an instruction directing a verdict in his favor although his uncontradicted evidence, if believed, would have *prima facie* established a defense pleaded.   p. 456.

9. INSURANCE.—*Plaintiff has burden of proving that provision of policy had been waived.*—In an action on an insurance pol-

icy containing a provision requiring all premiums to be paid at the home office, the plaintiff has the burden of proving that the provision had been waived.   p. 457.

10.  TRIAL.—*Evidence introduced which has no probative force should be stricken out, on motion to that effect.*—In an action on an insurance policy, testimony as to a transaction between the insured and defendant's agent, offered to show that the second annual premium had been paid, should have been stricken out, on motion to that effect, where it was without probative force.   p. 457.

11.  TRIAL.—*Motion to strike out evidence of no probative value should be sustained although no objection was made at time of introduction.*—Although no objection was made to the introduction of evidence that had no probative value, on the failure to introduce evidence of which it might have been corroborative, it was error to overrule a motion to strike it out.  p. 459.

12.  APPEAL.—Verdict of a jury cannot be upheld by mere conjecture or speculation.   p. 460.

13.  WITNESSES.—*Agents of insurance company not precluded from testifying in action on insurance policy where not shown to have had anything to do with making or continuing insurance contract.*—Section 553 Burns 1926, §523 Burns 1914, which provides that "no person who shall have acted as agent in the making or continuing of a contract with any person who may have died shall be a competent witness in any suit upon or involving such contract as to matters occurring prior to the death of such decedent, on behalf of the principal to such contract, against the legal representatives or heirs of the decedent" does not preclude agents of an insurance company from testifying in an action on a policy where it is not shown that they had anything to do with making or continuing the contract of insurance.   p. 460.

14.  INSURANCE.—*Conversations with insured in reference to payment of premiums to keep his policy alive, or relative to its reinstatement after lapsing for nonpayment, held competent.*— In an action on an insurance policy, payable to the plaintiffs if they survived the insured, and if none of them survived him, then to his executors, administrators or assigns, subject to the right of the insured to change the beneficiaries, conversations with the insured in reference to the payment of premiums to keep the policy alive, or relative to its reinstatement after it had lapsed because of nonpayment, were competent evidence (*Supreme Lodge, etc.,* v. *Schmidt,* 98 Ind. 374, and *Indiana Nat. Life Ins. Co.* v. *McGinnis,* 180 Ind. 9, distinguished).   p. 461.

15. EVIDENCE.—*Questions to insurer's employees at home office and answers thereto were competent so far as necessary to make entries in insurer's books intelligible, if entries competent.*—In an action on an insurance policy, questions to insurer's employees at home office and their answers thereto which were necessary to make entries in books of insurer intelligible, preliminary to offering such entries in evidence, were competent if the entries themselves were competent, but not to show the contents of the entries, for the entries themselves were the best evidence of their contents.  p. 462.

16. EVIDENCE.—*Entries in books of insurance company at its home office, as to nonpayment of premiums, held inadmissible as res gestae.*—In an action on an insurance policy, entries in insurer's books at the home office, made from reports from a branch office, relative to nonpayment of premiums on the policy in suit, were inadmissible as part of the *res gestae.*  p. 463.

17. INSURANCE.—*Admissions of insured against his interest, when binding on his beneficiaries.*—In an action on a life insurance policy, payable to certain named beneficiaries if they survived the insured, but if none of them survived him, then payable to his executor, administrator or assigns, and reserving the right to change beneficiaries, declarations and admissions against his interest made by the insured were admissible and binding on the beneficiaries (*Pape* v. *Pape,* 67 Ind. App. 153, distinguished).  p. 465.

From Posey Circuit Court; *Herdis F. Clements,* Judge.

Action by Mary L. Campbell and others against the Equitable Life Assurance Society of the United States. From a judgment for the plaintiff, the defendant appeals. *Reversed.* By the court in banc.

*John D. Welman, Phelps F. Darby, Morton C. Embree* and *Lucius C. Embree,* for appellant.

*George K. Denton, Lane B. Osborne, J. Wheeler Campbell* and *Winfield K. Denton,* for appellees.

NICHOLS, J.—This was an action by appellees against appellant upon a policy of life insurance upon the life of one Simeon N. Leonard.

The issues were joined upon an amended complaint in two paragraphs, an answer in three paragraphs and a reply to the second and third paragraphs of the answer.

There was a trial by jury, a verdict for appellees in the sum of $20,085 and, after appellees had remitted $100, judgment was rendered upon the verdict.

The only error assigned is that the court erred in overruling the appellant's motion for a new trial.

The first paragraph of the amended complaint was dismissed at the time of the trial.

It is averred in the second paragraph that on June 30, 1903, appellant issued to Leonard, a policy of insurance on his life, bearing date of said day, for $10,000, on the death of the said assured to be paid to his five children therein named as beneficiaries, being appellees and two others who died after the assured, unmarried, leaving no child or children and no father and no mother, but leaving appellees surviving them, the said surviving brother and sisters being their only heirs and being entitled to their estates.

That said assured and the beneficiaries have performed all the conditions of said policy and contract of insurance on their part to be performed.

Appellant answered in general denial, and by a second and a third paragraph of answer averring forfeiture of the policy for failure to pay the second annual premium.

The first paragraph of complaint contained an averment of waiver of proofs by a denial of liability because of forfeiture, and competent evidence to that effect was heard; but thereafter the first paragraph was dismissed. The second paragraph contained no such specific averment, but only the general averment that the assured and the beneficiaries had performed all of

the conditions of the policy and contract of insurance on their part to be performed. Appellant contends that after the dismissal of the first paragraph of complaint, there was no issue of waiver, that the evidence thereof was incompetent and could not be considered, and that the court erred in instructing the jury that a denial of liability on a policy of insurance by an insurance company on ground other than want of proofs or insufficiency thereof is a waiver of proofs, and excuses the beneficiaries from making the same. It does not appear by the record that there was any withdrawal of the evidence of waiver, or any motion to that effect.

It has been held by the Supreme Court of this state that where there is a general allegation of performance of the conditions of the insurance contract, as in this case, under such plea, proof of waiver of conditions may be made. *Union Fraternal League* v. *Sweeney*, 184 Ind. 378, 111 N. E. 304. The same authority holds that where an insurance company denied all liability on the ground of fraud, it waived the right to insist on proofs of death in accordance with the policy. The principle is applicable here. To the same effect see, *Travelers Ins. Co.* v. *Fletcher, etc., Nat. Bank* (1925), 84 Ind. App. 563, 150 N. E. 825, and authorities there cited.

Instruction No. 1, given by the court on its own motion, instructed the jury that, before appellees could recover, they must prove by a fair preponderance of the evidence all the material allegations of their complaint. This is a correct statement of the law so far as it goes. If appellant desired an instruction covering the issues more completely, it should have tendered such a one. *Newcastle Bridge Co.* v. *Doty* (1906), 168 Ind. 259, 79 N. E. 485; *Indianapolis, etc., Traction Co.* v. *Newby* (1909), 45 Ind. App. 540, 90 N. E. 29.

Appellant complains of instructions Nos. 5 and 6 given by the court at the request of appellees. These instructions told the jury that the burden was 5. upon appellant to prove by a fair preponderance of the evidence the nonpayment of the second annual premium, the alleged failure to pay which caused the forfeiture of the policy. It is the law that the burden is on the insurance company to prove the nonpayment of any premium after the first. *Supreme Lodge, etc.,* v. *Johnson* (1881), 78 Ind. 110; *Sovereign Camp, etc.,* v. *Cox* (1906), 40 Ind. App. 266, 78 N. E. 683; *New York Life Ins. Co.* v. *Lahr* (1922), 192 Ind. 613, 137 N. E. 673; *New York Life Ins. Co.* v. *Statham* (1876), 93 U. S. 24.

In this case, the issues were formed upon that theory, appellant having, by its second and third paragraphs of answer, pleaded nonpayment of the second 6. annual premium. Even if the burden were not with appellant, the court instructed the jury according to the pleadings, and appellant having thereby invited the alleged error, cannot be heard to complain thereof. *Akron Milling Co.* v. *Leiter* (1914), 57 Ind. App. 394, 107 N. E. 99; *Louisville, etc., R. Co.* v. *Miller* (1894), 141 Ind. 533, 37 N. E. 343; *Zeller, McClellan & Co.* v. *Vinardi* (1908), 42 Ind. App. 232, 85 N. E. 378; *Chicago, etc., R. Co.* v. *Coon* (1911), 48 Ind. App. 675, 93 N. E. 561; 4 C. J. 700 *et seq.*; Ewbank's Manual §255.

At the trial of the case, appellees introduced in evidence the policy, the application, proof of death of the insured, and proof of appellant's denial of liability. Appellant introduced evidence, which it 7. says was wholly undisputed, showing that the second annual premium had not been paid, and, claiming that such evidence made *prima facie* a complete defense, tendered a peremptory instruction that the jury

find for appellant. This the court refused to give, and appellant complains that the court's action was reversible error. But, appellant's evidence of nonpayment was all in parol, and involves the credibility of witnesses which is for the jury. In *Haughton* v. *Aetna Life Ins. Co.* (1905), 165 Ind. 32, 73 N. E. 592, the court, in reversing a judgment because the trial court gave a peremptory instruction, says: "But where a determination of the issue involves the credibility of witnesses, and rests upon inferences and deductions to be drawn from facts proved, it will be an invasion of the province of the jury for the court to direct a verdict." To the same effect, see *New York, etc., R. Co.* v. *Callahan* (1907), 40 Ind. App. 223, 81 N. E. 670; *Hall* v. *Terre Haute Electric Co.* (1905), 38 Ind. App. 43, 76 N. E. 334.

It is not claimed by appellant that appellees failed to establish their case as made by their complaint, but that appellant by uncontradicted evidence has established an affirmative defense. Of course, the burden was with appellant to establish such a defense. The Supreme Court, in *Talge Mahogany Co.* v. *Burrows* (1921), 191 Ind. 167, 179, 130 N. E. 865, makes the following forceful answer to appellant's contention: "But the evidence cannot be held insufficient to sustain a verdict for the plaintiff by reason of affirmative oral testimony of facts pleaded as a defense of which the appellant had the burden of proof. The jury may have found that such defense was not established because they did not believe appellant's witnesses who gave that testimony." The same principle is forcefully announced in *National City Bank* v. *Kirk* (1922), *ante* 120, 134 N. E. 772, 776.

It appears by the evidence that the gross amount of the first premium was $776.90. Of this sum, the insured paid to Mr. Ferguson, the agent through whom

## NOVEMBER TERM, 1926. 457

Equitable Life, etc., Society *v.* Campbell—85 Ind. App. 450.

the policy was issued, $155.38. This amount was twenty per cent. of the gross premium. The eighty per cent. of the first premium represented the agent's commission. It does not appear by the evidence as to whether the eighty per cent. was paid. It does appear, however, that the $155.38 was paid to the insurance company by the check of the insured.

Mrs. Grace Porter, who was the wife of the insured at the time of his death, testified that, a few weeks before his death, Mr. Ferguson, the agent to whom the policy was issued, came to the insured's home, "came to our home and he and Mr. Leonard were sitting on the porch and I was sitting in the reception hall, and I heard them discussing a policy, talking in rather loud tones. I thought they were quarreling at first, and I heard Mr. Ferguson say, 'I will take your note for sixty days' and Mr. Leonard said 'all right' and Mr. Leonard came in and asked me for a little note-book he kept upstairs in a wash-stand drawer and I got it for him and he sat down at the table in the hall pretty close to me and wrote the note— I knew it was a note because it was a note-book—and he took it out and gave it to Mr. Ferguson, and I heard him saying something about having gotten a receipt from a Paducah bank." There was no other evidence with reference to this transaction, and no other evidence of the payment of the second annual premium. To say that the jury could, from such evidence, draw an inference that the second annual premium was paid by such a transaction would be to base such inference upon the merest conjecture. There is nothing that indicates to whom such a note, if such it was, was made payable, the amount of the same, when it was payable, at what place it was payable, or the consideration for the same. The witness having testified that Mr. Leonard and Mr. Ferguson were at first talking in a loud

tone of voice and that she thought they were quarreling, this might better justify an inference that the matter in controversy between them was Mr. Ferguson's part of the first annual premium. We do not know, we cannot say, nor could the jury. It is true that through Mr. Ferguson the policy was originally written, but it is undisputed that he did not have any authority to collect the second annual premium; on the contrary, it is expressly provided in the policy that "all renewal premiums are due in the city of New York, but at the pleasure of the society suitable persons may be authorized to receive said premiums at other places on or before the due dates, but only on production of the society's receipt therefor, signed by the Secretary and countersigned by the authorized person to whom the payment is made." This provision, being a part of the policy, was in evidence. That it might have been waived may well be contended, but the burden rested upon appellees to show such waiver of an express provision of the policy, and there was no such evidence. Appellees having failed to connect this transaction between the insured and Mr. Ferguson with the payment of the second annual premium, and there being no other evidence that the second annual premium was paid by such transaction, or otherwise, appellant moved that such evidence be stricken out, which motion was by the court overruled, to which ruling appellant excepted. We hold that the motion should have been sustained. We can readily understand that such evidence might have been corrobative of more definite evidence, but, standing alone, it was certainly without probative force. The definition of evidence that should control under the circumstances here involved is thus stated in Elliott, Evidence §6: "The term 'legitimate' is essential to the accuracy of the definition, (of evidence), for 'forced, violent, or unnatural inferences' are not permitted by the

law, so that any matter or. element of fact which can only be made to serve to prove or disprove some other fact by violent, forced or unnatural inference cannot, in contemplation of law, be considered as evidence." It is the law that evidence that has no probative force should be rejected, and, for this reason, the evidence of the witness Porter should have been withdrawn from the consideration of the jury. *Ward* v. *Montgomery* (1877), 57 Ind. 276; *Pittsburgh, etc., R. Co.* v. *Conway* (1877), 57 Ind. 52.

Appellees present the question as to whether appellant took the proper steps in objecting to this testimony and in making the motion to strike it out in time to make such motion available. It will be observed that we have said that we can readily understand that such evidence might have been corroborative of more definite evidence, but, standing alone, it was certainly without probative force. As was said in *Howard Express Co.* v. *Wile* (1870), 64 Pa. 201, 71 Atl. 94, 95: "Evidence may be legally admissible as tending to prove a particular fact, which yet by itself is utterly insufficient for the purpose. It may be a link in the chain, but it cannot make a chain unless other links are added." Mrs. Porter's evidence was not incompetent because it was not germane to the issues, but, standing alone, it was insufficient to prove the fact that appellee sought to prove. Had there been an objection at the time that such evidence standing alone was insufficient, the court might properly have overruled it, expecting such evidence to become relevant in connection with other more definite evidence. But such more definite evidence was not produced, and the evidence from which the jury was asked to infer so much, was left standing alone, and wholly insufficient to support the inference which appellees desired the jury to draw. Upon failure of appellee to produce other more definite

evidence, of which Mrs. Porter's evidence might have been corroborative, the court might properly, on its own motion, have stricken her evidence out at any time before the final submission of the cause to the jury, and certainly it was error for the court to overrule appellant's motion to that effect, after appellee had failed to produce more definite evidence.

Appellees point out some circumstances from which they argue that the jury might have inferred that a note was given for the second annual premium, but such circumstances sustain at the most but possibilities, and as such they will not sustain a legitimate inference. A verdict of a jury cannot be upheld by mere conjecture or speculation. *Johnson* v. *Brady* (1915), 60 Ind. App. 556, 109 N. E. 230; *Pittsburgh, etc., R. Co.* v. *Vance* (1915), 58 Ind. App. 1, 108 N. E. 158.

Having reached the conclusions that such evidence should have been stricken out, we do not need to give any consideration as to the effect of the instructions pertaining thereto tendered by appellant and refused by the court.

Appellant complains that witnesses Smith and Thompson were not permitted to testify at the trial of said cause. It appears by the evidence that witness Smith was, at the time of testifying, an assistant to the auditor of appellant company and that, in the years of 1903 and 1904, he was cashier of such company and as such located at Louisville, Kentucky. At the time he was serving as such cashier, witness Thompson was the assistant cashier in the same office and had something to do with the book known as "Tickler." At the time he was testifying, he was a life insurance salesman. Appellees, to sustain their contention that these witnesses were incompetent, cite §523 Burns 1914, §553 Burns 1926, which reads as follows:

"No person who shall have acted as an agent in the making or continuing of a contract with any person who may have died, shall be a competent witness in any suit upon or involving such contract, as to matters occuring prior to the death of such decedent, on behalf of the principal to such contract, against the legal representatives or heirs of the decedent." It does not appear by the evidence, however, that either of these witnesses had anything whatever to do with the making or continuing of the contract of insurance involved in this suit, and they were not therefore precluded by the statute quoted from testifying to conversations had by them, or in their presence with the insured.

Appellee contends that the testimony of these two witnesses, Smith and Thompson, was not admissible for the reason that the beneficiaries under the policy, appellees herein, were the parties in interest and that statements or admissions made by the person whose life is insured are not competent evidence against the beneficiaries in a suit on the policy, citing to sustain their contention *Supreme Lodge, etc.,* v. *Schmidt* (1884), 98 Ind. 374, and *Indiana Nat. Life Ins. Co.* v. *McGinnis* (1913), 180 Ind. 9, 101 N. E. 289. But, as it seems to the court, those cases are distinguished from the instant case, in this: In each of the cases cited, the assured did not have any interest in the proceeds of the insurance and the interest of the beneficiaries was a vested interest, subject, it is true, to being divested by the insured under the terms of the policy in which he reserved the power to change the beneficiaries, and it was there held that the insured, not having exercised his power to change the beneficiaries, had no such interest in the policy as authorized him either to release the insurer or otherwise to destroy the vested interest of the beneficiaries by some voluntary act of his. The policy in suit provides that the pay-

ment should be made to appellees if they should survive the insured and if none should survive, then to his executors, administrators or assigns, subject to the right of the assured to change the beneficiaries, in other words, the interest of the beneficiaries was a contingent interest, their interest therein depending upon the contingency of their surviving the assured. The policy was acquired without the knowledge of the beneficiaries, and, to the extent that it was kept alive, was so kept by the performance of its conditions by the insured. The policy remained in the possession of the insured until he died. Under such circumstances, we hold that conversations with reference to the payment of the premiums that would keep the policy alive, or relative to its reinstatement after it had lapsed because of nonpayment, were competent in evidence.

Appellant contends that the court erred in refusing to permit appellant to read in evidence certain questions and answers, thirty-eight in number, in depositions of witnesses who were employees of appellant in its home office in New York City. We do not deem it necessary separately to discuss the alleged error in the exclusion of each of these questions and answers. As we interpret them, they were intended chiefly to identify certain entries in books of the home office, one of which was designated as the "Policy Tickler Book," another, as the "Renewal Receipt Book," and another, the "Secretary's Journal," and to make such explanation as to abbreviations used and otherwise as to make them intelligible, all preliminary to offering such entries in evidence. For this purpose, and so far as they served this purpose, if the entries themselves were admissible, the questions and answers were competent, but such questions and answers as undertook to tell the jury the contents of the entries were, of course, incompetent, for the entries themselves, if admissible,

were the best evidence of their contents. This leads us to a discussion of the question whether the entries were competent in evidence, for if not, questions preliminary to their introduction in evidence were properly excluded.

After giving much consideration to this question, and after examining authorities pertaining thereto, we are constrained to hold that the entries made in the home office in New York were not admissible in evidence as a part of the *res gestae.* In *State, ex rel.,* v. *Central States Bridge Co.* (1912), 49 Ind. App. 544, 97 N. E. 803, the court, in deciding the question as to whether certain book entries might properly be introduced in evidence as a part of the *res gestae,* stated that such entries are regarded as a part of the *res gestae* when the items offered are original entries made at or near the time of the transaction from reliable information derived from those in charge of the business or work on which the action is based. An able discussion of this question is found in a concurring opinion written by Roby, C. J., in *Johnson* v. *Zimmerman* (1908), 42 Ind. App. 165, 84 N. E. 541. The writer there states the rule to be that entries must be original, and not on the representations made by another party. In *Fleming* v. *Yost* (1895), 137 Ind. 95, on page 98, 36 N. E. 705, the court, speaking of such entries, and quoting from Rice, Evidence, says: "They must in all cases be contemporaneous with the main fact; they must have been made at the time the act was done, to which they relate, and must be well calculated to unfold the nature and quality of the facts they were intended to explain, and to so harmonize them as obviously to form one transaction."

In *Marks* v. *Box* (1913), 54 Ind. App. 487, 103 N. E. 27, the court states the rule to be that "the entries must have been made by a person having knowledge of the facts entered, or at least that the information was com-

municated to the entrant by some person engaged in the business whose duty it was to transact the particular business, and made report thereof for entry."

In the instant case, the business transacted was reported to the Louisville agency, and the entries made there were from information received from banks and others to whom receipts for premiums were sent for collection. Such entries must be held to be the original entries and not the entries made at the home office in New York at sometime thereafter from reports from the Louisville agency. It must be observed that the entries must be original and that they must be made at or near the time of transaction. While it is not definitely stated as to when these entries were made at the home office, they were not made until the transactions were first reported to the Louisville agency, and then by that office to the home office at New York, and the entries offered in evidence must have been made from the report sent in by the Louisville agency. It follows that they were not original entries made by one having knowledge of the facts, or to whom the facts had been reported by one transacting the business, and that they could not have been made at or near the time of transaction. As bearing upon the question of the time when the entries should be made in order that they may be *res gestae.* See, *In re Greenwoods Estate* (1919), 208 (Mo. App.) S. W. 635; *Ballard* v. *Beveridge* (1899), 61 N. Y. Sup. 648; *Tate* v. *Baugh* (1920), 264 Fed. 892; *Inman Bros.* v. *Dudley, etc., Lumber Co.* (1906), 146 Fed. 449; *Helbig* v. *Citizens Insurance Co.* (1908), 234 Ill. 251, 84 N. E. 897; *Ranney* v. *Lewis* (1914), 182 Mo. App. 58, 167 S. W. 601; *Goff* v. *Stoughton State Bank* (1890), 78 Wis. 106, 47 N. W. 190, 9 L. R. A. 859.

For errors at the trial, above pointed out, the judgment is reversed, with instruction to the court to grant a new trial.

ON PETITION FOR REHEARING.

NICHOLS, C. J.—Appellees, on petition for rehearing, complain that we have erroneously stated the provisions of the policy in suit as to the beneficiaries. In order that appellees may have the full benefit of the provisions of both the application and the policy, we state such provisions as follows:

It was provided in the application of the insured which was made a part of the policy and insurance contract, and which policy was made a part of the complaint by exhibit, that the policy should be payable "to my children T. B. Leonard, Mary C. Campbell, Sally T. and Otto C. Leonard share and share alike, Minnie L. Cabanni if living at my death otherwise to my executor, administrators or assigns—It being expressly understood and agreed that I reserve the right  *  *  * to change any beneficiary or beneficiaries named by me," etc. The policy itself provided that it should be payable "to his children, Mary L. Campbell, Minnie L. Cabanni, Sally T., Otto C. and T. B. Leonard, equally survivors or survivor; should none survive, then to the assured's executors, administrators, or assigns, subject to the right of the assured to change the beneficiary." It thus appears that the proceeds of the policy were payable in the alternative to the beneficiaries if they survive the insured, otherwise to his estate.

Appellees contend with much earnestness that their interest in the policy was a vested interest, and that, therefore, the acts and admissions of the insured were not binding upon them, citing to sustain their contention, *Pape* v. *Pape* (1918), 67 Ind. App. 153, 119 N. E. 11, upon which they rely with much confidence. But the facts of that case are so different from the ones here involved that it can have but little weight in determining the questions here presented. In

466    APPELLATE COURT OF INDIANA,

Equitable Life, etc., Society *v.* Campbell—85 Ind. App. 450.

that case, the court says, on page 168, that: "The policy in suit contained no provision for a change of beneficiary. Caroline therefore took a vested interest therein, which terminated upon her predeceasing." Here, there is definite provision for change of beneficiaries. In that case, the insured, or his estate, in any event, had no interest in the proceeds of the policy. Here, the insured, alternatively with the beneficiaries, had a contingent interest in the proceeds of the policy. In that case, the controversy was between those claiming to be beneficiaries, as to who was entitled to the proceeds of a valid living policy. Here, the offered evidence went to the very life of the policy, as to whether it had lapsed. The evidence offered and refused was of declarations made by the deceased against his own contingent interest. That such declarations against interest are admissible, see *Keesling, Treasurer,* v. *Powell* (1898), 149 Ind. 372, 49 N. E. 265; *Tyres* v. *Kennedy* (1891), 126 Ind. 523, 26 N. E. 394; *Royse, Exr.,* v. *Leaming* (1880), 72 Ind. 182. As was said in the principal opinion, the policy in this case was acquired without the knowledge of the beneficiaries, and, to the extent that it was kept alive, it was so kept by the performance of its conditions by the insured. The policy remained in the possession of the insured until he died and the beneficiaries had nothing whatever to do with the payment of the premiums thereon. Under such circumstances, evidence of the insured's declarations was competent. Authorities very much in point as to the admissibility of such evidence are: *Manhatten Life Ins. Co.* v. *Myers* (1900), 109 Ky. 372, 59 S. W. 30; *Atlanta Mutual Ins. Co.* v. *Price* (1923), 97 (Ala.) So. 826; *Ogden* v. *Sovereign, etc.* (1907), 78 Nebr. 804, 111 N. W. 797, 113 N. W. 524.

Rehearing denied.