EDWARD S. MITCHELL, INC., Appellant, *v.* DANNEMANN
HOSIERY MILLS, Respondent.

(Argued October 21, 1931; decided December 4, 1931.)

*Irving M. Engel* and *Karl W. Kirchwey* for appellant. On the issue of reformation, the Appellate Division having failed to make new findings of fact, its decision must be conclusively presumed to have been upon a question of law, and the sole inquiry is as to whether or not the record discloses any evidence to sustain the findings of the trial justice. (*Schnibbe* v. *Glenz*, 252 N. Y. 7; *Ganz* v. *Ganz*, 253 N. Y. 356; *Beatty* v. *Guggenheim Exploration Co.*, 223 N. Y. 294; *McDougall* v. *Shoemaker*, 236 N. Y. 127; *Partola Mfg. Co.* v. *General Chemical Co.*, 234 N. Y. 320.) There was ample evidence to sustain the findings of the trial justice. (*Joy* v. *Diefendorf*, 130 N. Y. 6; *Greenhall* v. *Davis*, 190 App. Div. 632; *Matter of Kindberg*, 207 N. Y. 220; *Strickland* v. *Henry*, 175 N. Y. 372; *Levy* v. *Louvre Realty Co.*, 222 N. Y. 14; *Caldwell* v. *Lucas*, 233 N. Y. 248; *York Mortgage Corp.* v. *Clotar Construction Corp.*, 254 N. Y. 128; *Boyd* v. *Boyd*, 252 N. Y. 422.)

*Thomas F. Hennessey* for respondent. The Appellate Division was correct in modifying the judgment of the trial court and deciding that reformation of the agreement should be permitted. (*Pitcher* v. *Hennessey*, 48 N. Y. 415; *Horn* v. *Schrenkeisen*, 110 N. Y. 55; *Marsh* v. *McNair*, 48 Hun, 117.) No commissions are payable under the agreement for shipments made on orders accepted after June 19, 1929. (*Outerridge* v. *Campbell*, 87 App. Div. 597; *Bailey* v. *Stafford, Inc.*, 178 App. Div. 811; *Everitt* v. *New York Engraving & Printing Co.*, 20 Misc. Rep. 548.)

LEHMAN, J. The defendant by written contract dated September 14, 1928, conferred upon Edward S. Mitchell the selling agency for its merchandise. Mitchell trans-

ferred the agency to the plaintiff, as he had a right to do under the terms of the agency contract. The defendant agreed to pay to the selling agent four per cent commission on . all "regular merchandise shipped by us on orders accepted during the life of this agreement." On "irregular" merchandise the defendant reserved the option to make sales "from time to time by ourselves" and on such sales the agent was to receive no commission, but it was provided that "This is not to apply, however, to sales * * * to your customers as hereinafter defined. It is further agreed that four months' written notice shall be sufficient to close our selling relations. After giving of such notice you are to be entitled to commissions of four per cent (4%) only on shipments of all merchandise made by us to any of your customers regardless of whether orders for such shipments are obtained through you or not. ' Your customers ' shall mean any customers whom you may heretofore have brought or may hereafter bring into business relations with us or with our predecessors, Dannemann Kuehnert Hosiery Co."

Pursuant to these provisions in the contract the defendant gave the stipulated notice on February 19th, 1929. The "selling relations" were accordingly terminated. Then a dispute arose as to the amount of commissions which should be paid to the plaintiff. The plaintiff claimed that the provision that "after giving of such notice" the selling agent should "be entitled to commissions of four per cent (4%) only on shipments * * * made by us to any of your customers regardless of whether orders for such shipments are obtained through you or not," applied only after the *expiration* of the four months' notice. Under such a construction the plaintiff would continue to be entitled, during those months, to commissions on all shipments of "regular" merchandise, whether obtained through it or not, and whether made to its customers or not, and so long as the defendant remained in business the plaintiff would be entitled to commissions on

orders shipped to customers introduced by it to the defendant.

In this action to recover such commissions the defendant urged that " after *giving* " the four months' notice the defendant was at liberty to sell " regular " merchandise as well as irregular merchandise without obligation to pay commissions on sales not made to customers of the plaintiff and that all obligation to pay commissions of any kind ceased at the expiration of the four months' notice. In case the court should refuse to accept its construction of the contract, it pleaded a counterclaim for reformation of the contract.

The construction urged at the trial by the plaintiff would require that the words " after giving of such notice " be read as if they were " after the expiration of such notice." The justice at Special Term rejected that construction and allowed the plaintiff commissions only upon orders received by the defendant, after the giving of the notice, from plaintiff's customers. The construction urged by the defendant would require that the words " during the life of this agreement," expressly inserted in the first paragraph, to read by implication into each succeeding paragraph. Doubtless the court might find ground for such implication if the result would otherwise be unreasonable, perhaps even if the result would otherwise be improbable. That is not the case here. Mitchell first became the selling agent of the mills owned by the defendant's predecessor, Dannemann Kuehnert Hosiery Company in February, 1927. At that time Mitchell had an established business and represented, as selling agent, other hosiery manufacturers while the mills were beginning a new business. Both parties must have contemplated that Mitchell would sell the products of the mills to his own customers, for the product was unknown and the mills had no customers. It is not unreasonable that Mitchell in entering into a sales agency contract, terminable on four months' notice,

should have provided that, when he induced his customers to enter into business relations with the mills, he should become entitled to a commission, not only on orders which he obtained directly, but on orders which were the indirect result of that contract, and that such commissions should continue, though selling relations between himself and the mills were terminated. The original contract made by Mitchell with the mill owners contained similar provisions in regard to commissions to those inserted in the contract which was made in September, 1928, when there was some change in the ownership of the mills and Mitchell desired permission to transfer the agency to a corporation. We should not read into these terms any implied limitation that such commissions, like commissions to be paid upon orders shipped to purchasers who were not customers of the plaintiff, should continue only during the " life of the contract " and while selling relations continued between the mills and the plaintiff. The fact that the words " during the life of the contract " were inserted in the clause relating to the payment of the stipulated commissions, concededly payable while " the selling relations " continued and were omitted from the clause relating to payments after the " giving " of the notice which was intended to terminate those relations, is not without significance. So the trial judge decided and accordingly gave the contract a literal construction, allowing the plaintiff commissions on orders accepted even after June 19th from plaintiff's customers. At the same time he dismissed the counterclaim for reformation.

Both parties appealed from the judgment to the Appellate Division and on that appeal the judgment was modified " by striking out that part thereof which dismisses the counterclaim, and by granting and decreeing reformation of the agreement * * * by reciting that * * * the plaintiff is entitled to commissions on sales to its customers up to June 19, 1929, only." The court

did not expressly reverse any findings of fact made by the trial court and made no new findings of its own. The modification is, therefore, only on questions of law and must have been so intended by the Appellate Division.

There was no error of law in the construction of the contract according to its letter when such construction produces no unreasonable result, even though we may be unable to say with certainty that the parties may not have intended otherwise. There was no error of law in the dismissal of the counterclaim, though the plaintiff has produced no testimony contradicting the testimony produced by the defendant of conversations, in which Mitchell is alleged to have agreed that no commissions of any kind should be paid after the selling relations were terminated by notice. Mitchell was dead at the time of the trial. Only the president of the defendant and his former stenographer were, so it is said, present at these conversations with Mitchell. Their testimony is not entirely free from inconsistencies and improbabilities and perhaps some self-contradictions. At least where the other participant to the conversations is dead their credibility becomes a question of fact. Indeed, the question of where the weight of the evidence lies would certainly not be free from doubt if that question might be considered.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

POUND, CRANE, KELLOGG and O'BRIEN, JJ., concur; CARDOZO, Ch. J., and HUBBS, J., dissent on the ground that by a fair construction of the contract the plaintiff is not entitled to commissions on sales to customers after June 19, 1929.

Judgment accordingly.