## NOLLER v. LONDON & LANCASHIRE INDEMNITY CO. OF AMERICA.

### No. 6771.

Circuit Court of Appeals, Seventh Circuit.
March 13, 1939.

Rehearing Denied May 3, 1939.

Albert Stump, Lloyd D. Claycombe, and John F. Watkins, all of Indianapolis, Ind., for appellant.

Earl M. Mann, of Terre Haute, Ind., and Irving M. Fauvre, and Howard S. Young, both of Indianapolis, Ind., for appellee.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This appeal is from a verdict and judgment in favor of plaintiff in a suit upon an accident insurance policy taken out by Dr. O. Paul Noller. The policy provided for the payment of $5,000 for death resulting, directly and independently of all other causes, from bodily injuries sustained solely through accidental means; and a special rider extended the coverage to pyogenic infection, the result of external inoculation through accidental contact with pyogenic bacteria. In addition to its answer in general denial, the defendant answered specially to the effect that the policy was fraudulently obtained.

The application for the insurance was made on September 17, 1935. Question 14 of the application asked whether the applicant had been in sound health during the

past five years, to which the answer was "Yes." Question 17 asked whether during the past five years applicant had received any medical or surgical treatment, to which the answer was "No."

Defendant contends that the evidence clearly shows that at and prior to September 17, 1935 the insured was not in good health in that he was suffering from angina pectoris.

There was testimony to the effect that the insured had been suffering from heart trouble for some time prior to his application. Dr. Denzil M. Ferguson, an osteopathic physician, testified that in 1931 the insured complained of pains in the arms, shoulder and chest; that although he did not make a true diagnosis he informed insured that he had angina pectoris, and that he should consult a heart specialist; that not until a week prior to the insured's death did he again speak to him about his condition; that at that time, on January 3 or 4 of 1936, the insured was suffering intense agony in his chest and arms; and that in his opinion the insured was suffering from the same heart ailment.

Dr. A. H. Lee testified that the insured had been suffering from a pyogenic infection in the summer of 1935 and was still suffering from the same infection on November 11, 1935. Dr. Henry Alburger testified that on January 12, 1936 he performed an autopsy on the body of the insured, at which time he found neither pyogenic infection nor any evidence of an infection being carried through the blood stream. Three other witnesses testified to statements and complaints by the insured to the effect that he had heart trouble.

Plaintiff and her daughter testified that they were present when Dr. Ferguson called at the home of the insured on January 3 or 4 of 1936 and that Dr. Ferguson then said: "Here is your whole trouble, right here. You have a misplaced rib." Seven other witnesses, who had known the insured a long time and had seen him frequently, testified he had no illness; that he appeared in excellent health; and that he never complained of pains in his chest, back or arms.

It is upon this state of the record that defendant claims that the trial court erred in not directing a verdict for defendant, and, in support of its contention, cites New York Life Ins. Co. v. Kuhlenschmidt, Ind. Sup., 11 N.E.2d 673 and Equitable Life

Assur. Soc. v. Strasberg, Ind.Sup., 14 N.E. 2d 703. We have examined the cases cited and they are clearly distinguishable. In the Kuhlenschmidt case the answers were admittedly false; in the Strasberg case the court held that the evidence was undisputed. Thus, in these cases there was no conflict in the evidence and there were no facts which cast any doubt upon the accuracy of the testimony. In such cases where the evidence is undisputed, there is in effect no question of fact and there devolves upon the trial court the duty of directing a verdict as a matter of law.

■■ In the instant case, however, there was substantial contradiction of the facts testified to by the witnesses. The determination of the controverted issues of fact that resulted from this conflicting evidence involved the credibility of the witnesses and rested upon inferences and deductions drawn from facts proved. Under such circumstances it would have been an invasion of the province of the jury for the trial court to have directed a verdict. Equitable Life Assurance Society v. Campbell, 85 Ind.App. 450, 150 N.E. 31, 151 N.E. 682; Cosman v. Donovan, 282 Mass. 224, 184 N. E. 664; Mitchell, Inc. v. Dannemann Hosiery Mills, 258 N.Y. 22, 179 N.E. 39; Mutual Life Insurance Co. v. Sargent, 5.Cir., 51 F.2d 4; Quock Ting v. U. S., 140 U.S. 417, 11 S.Ct. 733, 35 L.Ed. 501, and Haughton v. Ætna Life Ins. Co., 165 Ind. 32, 73 N.E. 592, 74 N.E. 613. The jurors are the sole and exclusive judges of the facts, of the credibility of the witnesses, and of the weight of the evidence.

It is next very earnestly contended that the plaintiff has failed to establish that the cause of death was a cause insured against. In other words, the insurer contends that the plaintiff did not establish a causal connection between the act upon which liability is charged and the death of the insured from the pyogenic infection.

On November 14, 1935, the insured accidentally lacerated the index finger of his right hand by contact with the revolving blades of an electric fan; half the nail was torn off and some of the tissue on the inside of the finger was removed. He was treated by Dr. Lee. Seven or eight days later there was pus and a superative discharge from the wound. Nine or ten days after the accident he complained of pain in his left arm and shoulder. On and after December 7, 1935 he had severe recurring

attacks of angina pectoris. From December 30, 1935 to January 8, 1936 the insured was treated by Dr. Henry W. Bopp and Dr. Ferguson. He died on January 8, 1936.

On January 8, 1936, Dr. Bopp performed an autopsy in the presence of Dr. M. J. Bohannon. He found a clot of fibrous material of recent origin in the heart, which clung to the heart valves and was whitish-yellowish in color. This was described as vegetative endocarditis, which is caused by bacterial infection. Bacteria entering the blood stream are carried to the heart and cause vegetative endocarditis. This clot of fibrous material had broken loose from the lining of the heart, had gotten into the blood stream, and had closed the vessels that supply the heart. It was his opinion that the insured had acquired an endocardial infection from the injury to his finger and that his death was caused solely by the bacteria entering his body through the wound sustained on November 14, 1935. He further testified that he removed this vegetative growth and did not replace it and that he found no more sclerosis in the heart than is usually found in normal persons of the deceased's age.

Dr. Bohannon testified that when they opened the heart there was a whitish-yellowish vegetation around the valves of the heart; that he found one of the coronary vessels occluded with a piece of fibrin or vegetation; that there was no more sclerosis than is ordinarily found in a person of his age; and that in his opinion sclerosis was not a contributing cause of his death. Dr. Bohannon further testified that they stripped off the vegetative growth from the walls of the heart and valves very easily, and found that it was of recent origin. Dr. Bohannon was of the opinion that the injury to the finger was the cause of his death; that it was the point of entrance of the infection into the system, that the bacteria was the beginning of a blood stream infection which set up the deposit at the valves and walls of the heart, that the finger itself merely provided an entrance for the bacteria, and that this pyogenic infection was the direct cause of death.

On January 12, 1936 Dr. Henry Alburger, in the presence of Doctors Bopp and Bohannon and three other physicians, also performed an autopsy on the body of the insured. Drs. August F. Knoefel, William C. Kunkler, and Alburger testified it was their opinion that there was no vegetative endocarditis; that there was advanced sclerosis, which originated independently of any accident; that the occlusion of the coronary artery was not caused by an embolus of vegetative material; that had vegetative growth been removed from the lining of the heart valves it would have left a mark, which was not found; and that there was no evidence of pyogenic infection. They admitted, however, that a pyogenic infection might get into the blood stream and cause vegetative endocarditis, and that a fragment might break loose, lodge in the coronary artery, occlude it and cause angina pectoris. All the physicians testifying agreed that vegetative endocarditis might result from an infected wound at any time from within a few hours to a few weeks. Dr. Alburger testified that, assuming two points from which the infection might have originated, it would be impossible to select the one causing the death.

Dr. Lee testified that the finger had healed without any complications or pyogenic infection, and, that although deceased had a pyogenic infection at another place at the time of the finger injury, that fact had no relation to his death; but that, if he were to assume that any pyogenic infection caused his death through producing vegetative endocarditis, then in his opinion the only pyogenic infection that could have caused it was the one for which he had treated him and which was not in his finger.

As before noted, there was testimony to the effect that the insured had angina pectoris for some time prior to making application for the insurance, as well as testimony that he appeared in excellent health and had never complained of pains.

Counsel for defendant argues that the jury had no right to localize the pyogenic infection, as the testimony equally established the possibility of the infection coming from either of two locations.

It is true that the burden was upon the plaintiff to establish that Dr. Noller's death was the result of external inoculation through accidental contact with pyogenic bacteria, and it is true that it is not enough to show that he had pyogenic infection of non-accidental origin at another place. Although the question is close, we are of the opinion, however, that there was evidence tending to support plaintiff's theory, and

we must assume that the jury who saw and heard the witnesses did not believe the evidence tendered in behalf of the defendant. We think the language in Great Lakes Dredge & Dock Co. v. Totzke, 69 Ind.App. 303, at page 308, 121 N.E. 675, at page 676, is in point: "The testimony of the witness Mr. Anderson tends to prove what counsel claim it does prove, and, in the sense that no other witness testified that Mr. Anderson did not see what he claims to have seen, Mr. Anderson's testimony is undisputed. But the testimony of a witness may be so inherently weak as to be unable to stand against the facts shown by other evidence and the inference to be drawn therefrom; or it may be so inconsistent with other facts and circumstances as to have little or no weight * * *." See Mutual Life Ins. Co. of N. Y. v. Sargent, supra; Lowenstein v. I. N. Platt & Co., Inc., 2 Cir., 58 F.2d 173; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 435; Yarbrough v. Prudential Ins. Co. of America, 5 Cir., 99 F.2d 874; Cosman v. Donovan, supra.

It is finally urged that the verdict is based on bias and prejudice against the defendant, and that the plaintiff has failed to prove the insured died as a result of bodily injury independent of all other causes. The defendant has not assigned any error in the trial of the case, and no exceptions were taken to the court's instructions to the jury. The trial and the instructions were exceedingly fair and impartial. It was the province of the jury to settle the questions of fact. The credibility of the witnesses, the inferences to be drawn from the testimony, and the weight to be given to the evidence were purely questions of fact for the jury; and their verdict can not be disturbed by this court, unless we can say as a matter of law that the verdict is capricious, arbitrary, and is not supported by the evidence. That is, this court cannot reverse the judgment solely because we may be of the opinion that the jury should have returned a verdict for the defendant. Upon the main facts at issue between the parties in this case, there was a hopeless and irreconcilable conflict. Witnesses of equal respectability, so far as we know, testified in direct opposition. We must, therefore, regard the verdict as settling the questions of fact.

Finding no reversible error the judgment will be affirmed.