### SILVER v. NEW YORK LIFE INS. CO.
### No. 7245.

Circuit Court of Appeals, Seventh Circuit.

Nov. 29, 1940.

Alvin Landis, of Chicago, Ill., for appellant.

Wendell J. Brown, of Chicago, Ill., for appellee.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a judgment in favor of the defendant in an action upon a life insurance policy. The issuance of the policy by the defendant, and its possession by plaintiff's husband at the time of his death, was conceded, but it was contended by the defendant that it was in his possession upon a conditional delivery, and that by reason thereof, the insurance was never in force. The trial was to a jury, and prior to the commencement thereof, the court ruled that the defendant had the right to open and close the argument.

Two questions are presented: (1) Was there evidence to sustain the defense that

the policy of insurance was conditionally delivered? and (2) Was the defendant entitled to the right to open and close the argument?

The first issue involves a question of fact determined by the jury, and in view of the limited authority of this court to review the evidence under such circumstances, it appears that no good purpose would be served in relating it in detail. We have read it and are satisfied that the verdict of the jury is substantially supported. We will, therefore, attempt to do no more than give a brief summary of the evidence as it relates to the issue in dispute.

The complaint filed by the plaintiff was the usual form on a life insurance policy. It alleged the issuance, the payment of premiums by Louis Silver (husband of plaintiff) as insured, his death on April 24, 1939, and the refusal of the defendant to pay. The answer admitted the material allegations of the complaint, but alleged that the policy was delivered to Silver for inspection only, and that the applicant executed and delivered to the defendant through its soliciting agent, a receipt, which recited that the policy was received by Silver for inspection only; that, therefore, the delivery of the policy was never completed by acceptance and payment of the premium thereon, but was outstanding on the inspection receipt on April 24, 1939, at which time Silver suddenly died.

The transactions between the parties were carried on by one Shellow, a soliciting agent for the defendant. Silver and Shellow, so it appears, were rather intimate friends, both having come to this country from the same community in Russia, and both belonged to an organization, the membership of which was composed of people of the same nationality. The evidence shows without dispute that on March 16, 1939, Silver made written application to the defendant for an ordinary life policy in the face amount of $20,000. No money was paid with the application, and defendant refused to write the insurance because of Silver's financial rating and condition of health.

A counter offer was made by the defendant that it was willing to issue a policy in the amount of $10,000, with a premium rated up eight years. This policy (the one in suit) was placed in the hands of defendant's agent, Shellow, to be delivered to Silver upon his acceptance and payment of premium. As to what happened from then on is a matter of dispute. Defendant relies largely upon the testimony of Shellow, which plaintiff contends is so hopelessly contradictory that it should not be believed. Shellow testified that on April 4, he took the policy over to Silver and endeavored to place it, but that its acceptance was refused. It is upon this date that plaintiff claims the policy was unconditionally delivered.

Plaintiff's theory finds some support in the testimony of relatives that they saw the policy in Silver's safe on numerous times between that date and the date of his death. Also, the circumstance is stressed that on April 5, Silver gave Shellow a check for $45 which, it is claimed, was a payment on the premium. There is no evidence to this effect, however, and Shellow testified that this was merely a loan which he had obtained from Silver and that the loan was repaid within a few days. Shellow testified that the policy was in his possession until April 19, when he had lunch with Silver at the Palmer House, when, still trying to sell the policy, he delivered it to Silver for inspection, and took the latter's receipt.[1] There is no question but that this receipt was signed by Silver on the date it bears. It is plaintiff's contention, however, that the words "and accepted from" were subsequently stricken by Shellow and the words "for inspection only" inserted for the purpose of converting an unconditional delivery to one that was conditional.

Shellow also testified that on Sunday evening, April 23, he met Silver at a lodge meeting where the latter told him that he had decided not to take the policy and that he (Shellow) said: "I will be in Monday to see you." Plaintiff, who was present at this meeting, testified that her husband had no conversation with Shellow. The next morning, as Shellow was on his way to see Silver, he learned of the latter's death.

Each side had a handwriting expert who testified as to their opinion concerning certain features of the policy receipt.[1]

---

[1] "4/19 1939
"For Inspection Only
Received of ~~and accepted from~~
M. Shellow Agent of the New York Life
Insurance Company Policy No. 16042195 for $10,000 Insurance on my life, in above named Company, the same being as applied for, "Louis Silver."

Plaintiff's expert expressed the opinion that the word "only" was not written by the same pen and at the same time as the word "Shellow" and that the word "only" was written in a different type of ink to that used in writing the other words. Defendant's expert would express no opinion as to whether the word "only" was written at the same time and with the same color of ink because that word had been blotted.

Plaintiff's principal argument revolves around this receipt. If the receipt was what it purports to be, plaintiff concedes it has no cause of action. We think the most that can be said from the standpoint of the plaintiff is that the circumstances created some suspicion concerning it. We are unable to find any justification, however, for holding that the jury was not justified in accepting Shellow's version. When all the circumstances are considered, there is considerable evidence which supports the reasonableness of his testimony. It is a reasonable inference that an experienced insurance agent, as Shellow was, would not make an unconditional delivery of a policy without receiving payment for the premium either in money or by note. While defendant could not dispute the recital in the policy as to the receipt of premium, yet if such premium had been paid, we think it certainly would have been admissible in support of plaintiff's theory. In fact, it would have refuted defendant's theory that the policy was delivered conditionally. The amount of the premium was $579.50—a rather large amount for a person to pay in the financial circumstances which the evidence shows Silver to have been—and the fact that there was no evidence of payment, creates another strong inference that it was never paid.

There is other testimony which lends support to Shellow's version of the matter. For instance, on April 15, 1939, subsequent to the time plaintiff contends the policy was delivered, Shellow ordered an alternate form of policy. This was testified to by defendant's cashier. An alternate policy would issue only if the original policy had not been accepted. The alternate policy which Shellow requested was for a modified endowment plan which provided for a lesser premium and a correspondingly lesser commission. It is inconsistent with plaintiff's theory that a policy was delivered on April 5, when ten days later Shellow was attempting to obtain a dif-

ferent form of policy, knowing that Silver was not eligible for both.

It is not difficult to understand that the jury might well have doubted plaintiff's theory that Shellow changed the policy receipt for the purpose of defrauding the plaintiff, whose husband was his friend, in order to enable the defendant to escape liability. True, there is testimony by plaintiff's witnesses as to occurrences after Silver's death, which cast further suspicion upon Shellow. According to their testimony, he refused to show the policy receipt and also proposed that if Silver's relatives would pay the premium that the policy would be in force. The money for the premium was obtained, but upon the advice of an attorney, it was not paid. Shellow testified, however, that he was offered money in payment of the premium and that he advised the relatives to go to defendant's office. At any rate, he received no money and again his version is corroborated to some extent. For instance, his superior agent testified that within three hours after Shellow had learned of Silver's death, the inspection receipt was turned over to him. It hardly seems reasonable that Shellow would have attempted to collect the premium after this receipt was out of his hands. We have merely reviewed the facts in a general way, but sufficiently, we think, to disclose that the questions involved were for the jury.

■ In Fairmount Glass Works v. Coal Co., 287 U.S. 474, 481, 53 S.Ct. 252, 254, 77 L.Ed. 439, it is said: "The rule that this Court will not review the action of a federal trial court in granting or denying a motion for a new trial for error of fact has been settled by a long and unbroken line of decisions * * *. The rule precludes likewise a review of such action by a Circuit Court of Appeals. * * *" This rule was announced and followed in two recent decisions of this court. Gay, Sullivan & Co., Inc. v. Glaser, Crandell Co., 7 Cir., 102 F.2d 149, and Noller v. London & Lancashire Indemnity Co., 7 Cir., 103 F.2d 622.

■ We are also unable to agree with plaintiff's second contention that the court erred in permitting the defendant to open and close the argument. When the case was called for trial, defendant's counsel called the attention of the court to the fact that its answer substantially admitted

all the allegations of the complaint. For instance, it was admitted that the policy was issued as alleged, found in the possession of the named insured at the time of his death, that plaintiff was the person named as beneficiary, and that the form of the policy was the same as the copy attached to the complaint. The insured's death and proof of the same were admitted as alleged. Counsel's statement then continued: " * * * and admits that if the defendant did not go forward with the evidence at the outset of the trial by offer of proof, that the plaintiff would be entitled to judgment for ten thousand dollars with interest at the statutory rate, as set forth in her complaint." Then follows defendant's motion that—" * * * the defendant moves the Court to be permitted to take the lead in the examination of the jury, and have the right to open and close the arguments before the jury, in the event this case ultimately be determined to be a case properly to be decided by the jury." At that time the court asked counsel for the plaintiff: "Well, I would still ask, if the case, with the admissions of counsel, if you both rested, with those admissions, against whom would the judgment be"? And plaintiff's attorney responded: "Oh, the judgment would be against the defendant, of course."

It therefore seems plain that the burden was upon the defendant to overcome the admitted prima facie case of the plaintiff. It was sought to overcome this prima facie case by a plea and proof that the policy was unaccepted and outstanding on an inspection receipt at the time of the death. The record leaves no room for doubt but that the case was tried upon this theory. It was thus argued to the jury by counsel for both sides, and the jury was so instructed by the court. The charge is plain, with no room for misunderstanding. It states: " * * * The burden of proof is upon the New York Life Insurance Company to prove by a greater weight or preponderance of the evidence that the policy was delivered to Silver for inspection purposes only, and if you believe it was proven by a greater weight of the evidence or preponderance of the evidence, you must find the issue for the defendant company, but if you find the policy was delivered and accepted by Silver, then it is unnecessary to prove that the premium or any part of it was paid."

It would serve no useful purpose for us to quote extensively from the authorities which sustain defendant's position. In Liptak v. Security Benefit Ass'n, 350 Ill. 614, 618, 183 N.E. 564, 566, the rule is stated thus: " * * * If appellee was, under the pleadings and admissions of appellant, entitled to judgment, in the absence of proof supporting the special plea, appellant carried the burden to go forward in the offer of proof and was entitled to open and close the evidence and arguments. * * *"

There are many Illinois cases to the same effect. South Park Com'rs v. Trustees of School, etc., 107 Ill. 489; Gardner v. Meeker, 169 Ill. 40, 48 N.E. 307; Gibson v. Reiselt, 123 Ill.App. 52; Huddle v. Martin et al., 54 Ill. 258.

There may be some doubt as to whether this is a matter of substantive law controllable by the laws of the state. It seems unnecessary, however, to decide any doubt in this respect for the reason that the Federal Courts, while holding it to be a question of practice, also hold it is a matter not affecting the merits of the controversy and, therefore, not subject to review. Hall et al. v. Weare, 92 U.S. 728, 23 L.Ed. 500; Lancaster v. Collins, 115 U.S. 222, 225, 6 S.Ct. 33, 34, 29 L.Ed. 373. In the latter case, it is said: "It is also assigned for error that the court refused to permit the counsel for the plaintiff to make the closing argument to the jury, the contention on the part of the plaintiff being that the affirmative was with him. But this is purely a question of practice, to be reviewed only by a motion for a new trial in the trial court, and, is not the proper subject of a bill of exceptions or of a writ of error, because it does not affect the merits of the controversy. * * *"

Plaintiff, in support of its argument in this respect, cites cases from the States of Texas, Georgia and Arkansas. No comment on these cases is required as the authorities of our own jurisdiction conclusively sustain defendant's position.

The judgment is affirmed.