Jacob Markowitz, J.
Heretofore by order dated July 22, 1960 all the issues of fact and law raised by the pleadings were referred to Hon. Joseph A. Brust to hear and report thereon with his recommendations. After extensive hearings, the Referee has submitted his report containing his findings and recommendations. The parties involved have duly made separate motions with respect to said report. The action is to redeem six parcels of unimproved realty situated in Bronx County. The conveyances, which are the subject of this action, were deeds absolute in form which plaintiffs charged were intended merely as collateral security for certain loans. Relief is sought adjudicating these transfers of title to be mortgages; granting to the plaintiffs rights of redemption and directing reconveyances to plaintiffs of the properties upon payment of such sums as may be found to be due upon the loans and advances made free and clear of all incumbrances created by or suffered by the defendants; directing that defendant Bossi return to the respective plaintiffs entitled thereto certain transfers of tax lien, and granting plaintiffs such other further and different relief as to the court may seem just and equitable.
Max Sakow, who died on January 30, 1956, had been a real estate broker, investor and dealer in unimproved lands in the Pelham Park area of Bronx County. The defendant Bossi is *112 a builder and investor in real estate who had numerous dealings with Max Sakow.
Plaintiff Bose Sakow, widow of Max Sakow, is the executrix of her deceased husband’s estate and Walter Sakow is their son. Walter Sakow had been associated with his father in the real estate business and continued in that business after his father’s death.
The properties involved are lot number 46 and lot number 50 in block 4310, herein referred to as the “ Gibraltar parcel lot number 4 in block 4120 and lot number 40 in block 4307, herein referred to as the “ Turano lots lot number 1 in block 4465 and lot number 1 in block 4307.
All of these parcels were deeded to defendant Bossi and were duly recorded in Bossi’s name. The defendants Gibraltar and Turano by way of affirmative defenses contained in their respective answers, assert they acquired their parcels for valuable consideration and without notice of the claims of plaintiffs.
Defendant Bossi alleges, as a first defense, that the transfers of the properties effected by him were consented to and authorized by plaintiffs; as a second defense, that plaintiffs waived their rights to redemption; as a third defense, that plaintiffs permitted the transfers with full knowledge and are guilty of laches, and as a fourth defense and as a counterclaim that an account was stated with Bose Sakow, as executrix, and as a result thereof, there is an unpaid balance of $14,315 for which Bossi demands judgment.
It is undisputed that the several transfers of properties to defendant Bossi, as is alleged in the complaint, although absolute in form, were delivered and accepted with the intent and understanding they were collateral security for moneys loaned and advanced. It follows by operation of law that these transfers of title were but mortgages. (Mooney v. Byrne, 163 N. Y. 86; Donohue v. First Trust Co., 1 A D 2d 573; Warren’s Weed, New York Real Property [4th ed.], vol. 3, p. 518; Wiltsie, Mortgage Foreclosure [5th ed.], vol. 1, § 21 et seq.)
Section 320 of the Beal Property Law reads in part: “ A deed conveying real property, which by any other instrument, appears to be intended only as a security in the nature of a mortgage, although an absolute conveyance in terms, must be considered as a mortgage ”.
The law is well settled as is said in the leading case of Mooney v. Byrne (supra, p. 93): “ the courts are steadfast in holding that a conveyance, whatever its form, if in fact given to secure a debt, is neither an absolute nor a conditional sale, but a mort *113 gage, and that the grantor and grantee have merely the rights and are subject only to the obligations of mortgagor and mortgagee.”
The right to redeem is an essential part of a mortgage and such right will be read into it by law even if no provision for redemption is to be found in the instrument. (Mooney v. Byrne, supra; Baugham v. Slane, 181 Misc. 1041.) Such right, however, is not altogether absolute. In seeking equitable relief, plaintiffs must act equitably. It will not be granted to one who has acquiesced, consented to or ratified the sale of the property. (Donohue v. First Trust Co., supra.) Nor will it be enforced against a subsequent purchaser who buys in good faith and for a valuable consideration and without notice.
However, even in such case: ‘ ‘ The mortgagee could not, by selling the mortgaged premises, change the rights of the plaintiff as against himself * * ® As a substitute * * ® she may treat the value of the land, measured in money presumed to be in his hands when her right to redeem was established, as land * * * the law raises the presumption that he now has the full value of the land as a separate fund in his hands ”. (Mooney v. Byrne, supra, pp. 94-95.) “ He cannot escape by offering to pay what he has received on selling the lands but must pay the value at the time of the trial ” (Mooney v. Byrne, supra, p. 97).
The Referee has found that the several conveyances of property as set forth in the amended complaint made by the plaintiffs to defendant Bossi were, although absolute in form, intended as security for loans and advances and he concluded that said conveyances were in effect mortgage liens; that no action or proceedings were instituted by the defendant Bossi, the grantee of said conveyances, to establish, enforce or foreclose the said mortgage liens or to cut off the equities of redemption possessed by the grantors. The court concurs with these findings.
On August 2, 1956 the defendant Bossi conveyed lots 46 and 50 in block 4310, referred to herein as the “ Gibraltar parcel ’? to the defendant Gibraltar Realty Corporation. The Referee found that the plaintiff Walter Sakow, acting for himself and the other plaintiffs, participated in and had knowledge of the negotiations resulting in the afore-mentioned conveyance to defendant Gibraltar Realty Corporation and acquiesced in and consented to said conveyance and that the consideration paid therefor was fair and reasonable in the circumstances then prevailing, and he concluded that the complaint should be dismissed as to the defendant Gibraltar Realty Corporation.
*114 The events and circumstances leading up to the transfer of title to the Gibraltar Realty Corporation revolved around certain factual situations and the credibility of witnesses.
Of vital evidence on behalf of the defendants was the testimony of Martin Tytell. He described himself “asa typewriter specialist and an examiner of disputed documents ”. The Referee found him to be well qualified to speak as an expert. Mr. Tytell testified that he made an examination and study of the typewritten material on the Gibraltar contract, as well as upon two other typewritten documents furnished to him, concededly typewritten in the office of Sidney Shutz, the estate’s attorney.
Upon the basis of his examination of these documents, Mr. Tytell testified it was his unqualified opinion that the typewritten matter appearing on the contract had been typewritten upon the same machine that had been used to typewrite the two documents given to him as a basis for comparison. The purpose of this testimony was to show the knowledge, consent and acquiescence of the plaintiffs to the transfer of the Gibraltar parcel by Bossi to Gibraltar Realty Corporation. Such testimony when given by a competent expert is entitled to great weight.
The court concludes that there was ample evidence in the record to support the finding made by the Referee that the plaintiff Walter Sakow, acting for himself and the other plaintiffs, participated in, had knowledge and acquiesced and consented to the conveyance of the Gibraltar parcel to the defendant Gibraltar Realty Corporation.
The Referee further found that on May 3,1957, the defendant Bossi conveyed to the defendant Turano lot number 4 in block 4120 and lot 40 in block 4307; that plaintiffs acquiesced in and consented to said conveyances to the defendant Turano and that the consideration paid therefor was fair and reasonable in the circumstances then prevailing and he recommended that the complaint be dismissed as to the defendant Turano.
The court concurs in the finding and recommendations of the Referee with respect to this transaction, and that the price paid for same was fair and reasonable and that the plaintiffs had knowledge and acquiesced in this transaction.
Tn determining the state of indebtedness between the plaintiff and defendant Bossi, the Referee has found that the plaintiffs are entitled to the sum of $26,652.79 and that the defendant is entitled to the sum of $17,130.45. It is undisputed that the deceased received the sum of $25,000 from defendant Bossi in consideration of which he made the transfers by deeds of *115 certain real property referred to as the “Gibraltar parcel ” and the “ Tnrano lots ” to defendant Bossi.
It is not seriously disputed that during the period from February 1,1955 to October 17,1955 the defendant Bossi received $10,000 from the deceased. The defendant Bossi disputes the recommendation of the Referee that plaintiffs are entitled to be credited with a payment of $3,000 on December 6, 1955 made by one of the deceased’s corporations — W. E. D. Corporation, by check on that day. The proceeds of said check were admitted as received by defendant Bossi. But he claims that it was part of an exchange transaction in which he had given the deceased $3,000.
The Referee found, after credit to plaintiffs of the sum of $13,000, that the total indebtedness owed to defendant Bossi by Sakow at the time of his death was the sum of $12,000, which was evidenced by a note in that amount.
Bossi claims that the said note represents an additional obligation of deceased to him. It appears that the $12,000 note dated January 21,1956 was not secured by any collateral. Bossi was unable to remember when he gave the deceased the consideration for the said note or whether such consideration was given by check or whether it was given to him by cash.
He testified that he gave it to him a long time ago and later he said he gave it to him by cash and check but he did not remember whether he had any of the checks. Judge Griffith in appearing as a witness for defendants, testified that on Saturday, January 21, 1956, he, Bossi and Max Sakow met in Max Sakow’s office. Thereafter Bossi and Max Sakow went into an inner office and conferred for some time and then Max Sakow said to Judge Griffith to write a note that ‘ ‘ Goffredo (Bossi) and I have straightened everything out and make a note for $12,000 payable in April.”
The Referee is justified in his conclusion that the said promissory note for $12,000 represented the state of the indebtedness on this date between deceased and Bossi and was not a new and original obligation.
With respect to the $5,000 known as the “Yeshiva loan”, Bossi testified that he made this loan in cash after he had loaned to the deceased $25,000 and that he received no collateral from him. Bossi has failed to prove such a loan to the deceased and the Referee correctly concluded that there is an insufficient showing of a loan of $5,000 in cash to a man now deceased. The only person allegedly present with respect to the $12,000 note and the $5,000 “Yeshiva loan” was the deceased and defendant Bossi.
*116 Another of the disputes and not referred to in the report is a check in the sum of $2,500. It is Bossi’s contention that he and the deceased had a contract for the purchase of property on Burke Avenue in which Bossi deposited $2,500. He further contends that this deal was not completed and Sakow was to give him credit for the deposit. Bossi said his corporation, the Bosco Construction Corporation, advanced the sum of $2,500.
As to this item Bossi’s then attorney, who presented Bossi’s claims to the estate after the decedent’s death, testified that he did not present such a claim; that he had never heard of it and that both Bossi and he testified that no such claim was made by Bossi when he enumerated his claims in his examination before trial. Bossi has failed to prove this item.
Where a participant to an alleged conversation or transaction is dead, the credibility of a witness to such conversation or transaction became a question of fact.
The Referee is not bound to refrain from exercising his judgment and to adopt blindly the statements of the witness for the simple reason that no other witness has denied them. Where truth hangs upon the credibility of witnesses, his decision should be given the greatest weight. His was the opportunity to observe and decide. (Mitchell, Inc., v. Danneman Hosiery Mills, 258 N. Y. 22, 27; Foreman v. Foreman, 251 N. Y. 237, 242; Amend v. Hurley, 293 N. Y. 587, 594; Boyd v. Boyd, 252 N. Y. 422, 429.)
The Referee has determined that the plaintiffs are entitled to be credited by Bossi in the sum of $2,727.76. This is based upon a document marked Plaintiffs’ Exhibit 23, whereby the plaintiffs are to be credited by Bossi with payments in the amount of $2,227.76.' Appearing as a recital in that document is the following: ‘ ‘ Whereas the executrix is entitled to a credit in the sum of $500 on the basis of another transaction between the decedent and Bossi ”, Bossi claims that this $500 credit has already been given to the plaintiffs in some other transaction but offers no proof or adequate explanation to support his statement.
The Referee is correct in crediting the plaintiffs with the full sum of $2,727.76.
In connection with the sale of the “ Gibraltar parcel ” part of the consideration was a purchase-money mortgage received by Bossi in the sum of $4,064.38. Bossi objects to a credit to plaintiffs in this amount, contending that it is subject to a scaling down in the event the amount represented as due on the prior mortgages was not substantiated. The proof estab *117 lishes this contention of Bossi. Since the Referee has found that the conveyance of the ‘6 Gibraltar parcel ’ ’ was acquiesced in and consented to by plaintiff Walter Sakow, acting for himself and other plaintiffs, and the contract of sale for said property was first prepared in the office of the attorney for the Sakow estate, it would be more equitable to direct the assignment of the said purchase-money mortgage to the estate of Max Sakow. Finding number 5 is modified to provide for such assignment and finding numbers 16 and 18 should be modified by eliminating credit of $4,064.38 to plaintiffs.
The findings and recommendations of the Referee, except as specificially modified herein, are approved and the motions of the respective parties are disposed of accordingly. Settle findings, conclusions and judgment.